# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

----------------------------------------------------------------

CHARLES BARBER, on behalf of himself and   :
all others similarly situated,              :      Civil Action No.: 13-4199
                                            :

              Plaintiff,              :
                                            :

         v.                          :
                                            :

UNIVERSAL SPACE NETWORK, INC.    :
                                            :

             Defendant.           :

----------------------------------------------------------------

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER
## AWARDING ATTORNEY'S FEES
## <u>AND REIMBURSEMENT OF EXPENSES</u>

**Murphy Law Group, LLC**
Michael Murphy, Esquire
One Penn Center, Suite 1230
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267.273.1054
FAX: 215.525.0210
murphy@phillyemploymentlawyer.com
*Attorney for Plaintiff*

Dated: June 12, 2014

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 1

III.  THE AWARD OF ATTORNEY'S FEES IS FAIR AND REASONABLE ....................... 4

   A.  A Reasonable Percentage of the Settlement Amount is the Appropriate Method of

       Awarding Attorney's Fees in Common Fund Cases ............................................. 4

   B.  Thirty-Five Percent of the Settlement Amount is an Appropriate Fee in this Case ............ 7

       1.   Size of the Fund Created and Number of Persons Benefited ....................................... 7

       2.   Presence of Absence of Substantial Objections to the Proposed Attorney's Fees ....... 9

       3.   Skill and Efficiency of the Attorneys Involved ......................................................... 10

       4.   Complexity and Duration of the Litigation ............................................................... 11

       5.   Risk of Nonpayment ................................................................................................. 12

       6.   Amount of Time Devoted to the Case by Class Counsel ........................................... 14

       7.   Awards in Other Common Fund Cases ..................................................................... 14

   C.  A Loadstar Cross-Check Demonstrates that the Fee Is Reasonable ................................ 16

IV.  THE COURT SHOULD AWARD COUNSEL'S COSTS AND EXPENSES ................ 18

V.   CONCLUSION ...................................................................................................... 18

## I.      INTRODUCTION

Plaintiff respectfully submits this Memorandum of Law in Support of its Motion for an Award of Attorneys' Fees and Reimbursement of Expenses in connection with the final resolution of this litigation.  The attorneys' fees are to be paid from the proposed $130,000.00 settlement (the "Common Fund" or "Settlement Amount") with Defendant, Universal Space Network, Inc. ("Defendant").[1]  Because an attorneys' fee award amounting to thirty-five (35%) of the Common Fund created is appropriate and reasonable in this case in view of the risk involved, the work performed, and the considerable result achieved, and because Class Counsel's requested costs and expenses, which were incurred in the successful prosecution and settlement of this case, are reasonable, Plaintiff respectfully requests that the Court grant this Motion.

## II.     BACKGROUND

As the Court is aware, on or about July 19, 2013, Plaintiff, Charles Barber, initiated this action against Defendant by filing a Collective and Class Action Complaint with this Court.  In pertinent part, Plaintiff contends that Defendant has improperly failed to pay him, and all others who are similarly situated, overtime compensation pursuant to the requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333, *et seq.* and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Con. Stat. § 260.1, *et seq.*

Plaintiff was employed by Defendant as a Ground Network Operator ("Operator"). Plaintiff alleges that Defendant willfully and unlawfully misclassified Plaintiff and other similarly-situated Class Members as "exempt" under the FLSA and willful and improperly failed

---

[1] The settlement reached in this matter is encompassed in a Joint Stipulation of Settlement and Release (the "Settlement Agreement"), which was filed with the Court along with the parties' Joint Stipulation for Order Certifying Class for Settlement Purposes, and Granting Preliminary Approval of the Settlement Agreement, Class Notice, and Opt-Out Form. (See Docket Entry No. 22).

to pay Plaintiff and Class Members overtime compensation as required by the FLSA. Plaintiff contends that Class Members are not exempt from receiving overtime benefits as Plaintiff and the Class Members did not exercise any discretion or independent judgment over matters of significance on behalf of Defendant and there are no other exemptions under the FLSA and/or PMWA which would be applicable to Plaintiff and Class Members. Accordingly, Plaintiff and Class Members were/are, within the meaning of the FLSA, non-exempt employees of Defendant and are entitled to overtime compensation for work performed in excess of forty (40) hours in a work week.

Class Counsel has prosecuted the action vigorously on behalf of the class. The parties reached settlement of these claims only after Class Counsel conducted a thorough investigation of the claims against Defendant and of Plaintiff and potential members of the class to be certified under this Settlement Agreement. The investigation included, but was not limited to, reviewing payroll records, extensive consultation with the Class Representative and Opt-In Members and performing numerous calculations with respect to the potential damages in this matter. Class Counsel also has conducted extensive research regarding the FLSA.

Class Counsel has represented the Class vigorously and has achieved a considerable result for the Class: a total of **$130,000.00.**[2] Based upon initial calculations which may increase or decrease as a result of a number of factors, Class Counsel believes each class member who has worked for Defendant during the maximum amount of the Covered Period (which is October 30, 2010 through February 28, 2014) could receive up to $7,400.00 of compensation from the settlement. This substantial amount is calculated after attorney's fees, litigation expenses, enhancement payments, and class administration expenses are deducted from the proposed

---

[2] Pursuant to the parties' Settlement Agreement, the "Settlement Class" or "Class" is defined as: "all present and former employees of Universal Space Network, Inc. who were designated, paid, or employed as a Ground Network Operator from October 30, 2010 until February 28, 2014."

Settlement Amount.  It is Class Counsel's belief that the aforementioned amount represents a significant recovery for class members in light of the significant risks associated with continued litigation which includes, but is not limited to, the risk of decertification and a finding that the Operators were properly classified as exempt under the FLSA.

In recognition of the substantial benefit they have conferred on class members, Class Counsel seek an award of attorneys' fees of thirty-five percent (35%) of the $130,000.00 Settlement Amount, as well as reimbursement of their reasonable costs and expenses in the amount of $583.21.  This amount is consistent with the original thirty-five (35%) contingent fee agreement entered into with Class Representative Charles Barber prior to the initiation of this litigation.

The requested fee is reasonable given the size of the fund created, the skill and efficiency of Class Counsel in obtaining such a favorable result, the complexity and duration of the litigation, the risk of nonpayment, and the time and effort devoted to the case by Class Counsel. Moreover, and equally significant, no class member has objected to the requested fee, and the time to object has expired.  A thirty-five percent (35%) fee is consistent with fee awards in common fund cases in this Circuit and satisfies the cross check of lodestar generated by Class Counsel.  Finally, the requested costs and expenses, which were incurred in furtherance of this litigation, are reasonable.

Accordingly, the Court should grant Plaintiff's Motion and award the requested attorneys' fees, costs, and expenses.

**III.    THE AWARD OF ATTORNEY'S FEES IS FAIR AND REASONABLE**

    **A.    <u>A Reasonable Percentage of the Settlement Amount is the Appropriate Method of Awarding Attorney's Fees in Common Fund Cases</u>**

        For their efforts in creating a common fund for the benefit of the Settlement Class, Class Counsel seeks as attorney's fees thirty-five percent (35%) of the fund recovered for the Class.  It is well-settled in this District and this Circuit that a fee award is appropriate in a case like this where a common fund for the benefit of class members is created through the efforts of counsel.

        Third Circuit case law establishes two methods for evaluating the award of attorney's fees — the lodestar approach and the percentage-of-the-recovery approach — and each method has attributes suited to different types of cases.  <u>In re GM Trucks Litig.</u>, 55 F.3d 768, 820-21 (3d Cir. 1995) (citing <u>Report of the Third Circuit Task Force on Court Awarded Attorney Fees</u>, 108 F.R.D. 237, 250-53 (1985) (hereinafter, "<u>Report re Attorney Fees</u>"); <u>In re AremisSoft Corp. Sec. Litig.</u>, 210 F.R.D. 109, 128 (D.N.J. 2002)).  When approving a fee award, a court must first categorize the action it is adjudicating and then "primarily rely on the corresponding method of awarding fees*.*"  <u>In re GM Trucks Litig.</u>, 55 F.3d at 821.  After determining and applying the appropriate method, the court may use the other method as a cross-check to double check the fee. <u>Id.</u>

        This Circuit has emphasized that "[t]he percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 300 (3d Cir. 2005) (quoting <u>In re Prudential Ins. Co. of Am. Sales Practice Litig.</u>

Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998).[3]  The percentage-of-recovery method is used in common fund cases on the theory that the class would be unjustly enriched if it did not compensate counsels' work in generating the fund.  In re GM Trucks Litig., 55 F.3d at 821 (citing Report re Attorney Fees, 108 F.R.D. at 250). See also Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161, 165 (3d Cir. 1973) ("The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed.")).  As a court in this District has stated, "[a]ttorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services offered to the settlement fund under the common fund doctrine."  In re AremisSoft, 210 F.R.D. at 128. The Third Circuit has explained that the goal of the percentage-of-the-recovery method is to ensure "that competent counsel continue to undertake risky, complex, and novel litigation." Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 198 (3d Cir. 2000) (quoting Manual for Complex Litigation § 24.121 at 207).

---

[3] Under the percentage-of-recovery approach, the Court awards a percentage of the fund created by the attorneys' efforts as reasonable attorneys' fees.  The preference for the percentage-of-recovery method in common fund cases originated in the 1985 Third Circuit Task Force Report on Court Awarded Attorneys' Fees:

> As the 1985 Task Force Report recognized, using the lodestar method in the common fund context creates numerous problems.  First, because the lodestar compensates lawyers based on hours worked rather than results achieved, there is a risk that it will cause lawyers to work excessive hours, inflate their hourly rate, or decline beneficial settlement offers that are made early in litigation.  Second, requiring courts to decide how many hours a lawyer "reasonably" worked in pursuing a given matter requires an enormous investment of judicial time. Third, though creating the illusion of mathematical precision, the lodestar method can be quite subjective and can produce wildly varying awards in otherwise similar cases.

In re Cendant Corp. Litig., 264 F.3d 201, 256 (3d Cir. 2001) (citing Report re Attorney Fees, 108 F.R.D. at 246-48). See also id. ("In light of these criticisms, the 1985 Task Force Report recommended a different device for setting attorneys fees in common fund class action: the percentage-of-recovery method. This Court has generally accepted that recommendation.") (citations omitted); Report: Third Circuit Task Force Report on Selection of Class Counsel, 74 Temp. L. Rev. 689, 776 (2001) ("The 1985 Task Force made a compelling case for rejecting the lodestar approach in common fund cases. We see nothing that has changed in the interim to diminish the power of the arguments made in 1985.").

Here, the percentage-of-the-recovery method is appropriate.[4]  First, the Agreement in this case was negotiated to create a common fund of $130,000.00 to benefit a class of individuals who have not entered into retainer agreements with counsel.  This is the classic situation for application of the percentage-of-the-recovery method.  Second, the use of the percentage method decreases the burden imposed on the court by limiting the detailed and time-consuming lodestar analysis while assuring that the class members do not experience undue delay in receiving their share of the settlement.  See In re Activision Sec. Litig., 723 F. Supp. 1373 (N.D. Cal. 1989); Shaw v. Toshiba Info. Sys., 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("The lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed.").  Third, it most closely aligns the lawyers' interest in being paid a fair fee with the Class' interest in achieving the maximum possible recovery in employment actions.  See In re Prudential Ins. Co., 148 F.3d at 333 n.108 ("Others contend the lodestar method creates a rift between the class and its counsel, and may lead to collusive settlements in which plaintiffs' attorneys are willing to accept a low settlement in exchange for lucrative fees.").  Finally, where, as here, the settlement releases the Defendant from liability for damages and attorneys' fees, the percentage of recovery method is the most appropriate.  See Erie County Retirees Assoc. v. County of Erie, 192 F. Supp. 2d 369, 377 (W.D. Pa. 2002) (holding that it is more appropriate to use the percentage-of-recovery

---

[4] Even though the FLSA has a fee shifting provision, see 21 U.S.C. § 216(b), this case should appropriately be considered under common fund principles.  Determination of whether the percentage-of-the-recovery method should apply is based upon the common fund nature of the settlement — with the settlement agreement providing that both damages and attorneys' fees are to be  paid from the settlement fund — not the underlying nature of the action. Moench v. Robertson, 1996 U.S. Dist. LEXIS 21898, at *14 (D.N.J. 1996) (awarding 35 percent of common fund) (citing Report re Attorney Fees, 108 F.R.D. at 269).  See also Erie County Retirees Assoc. v. County of Erie, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (even though ADEA had a fee shifting provision which incorporated the fee shifting provision of the FLSA, settlement agreement provided for payment of attorneys' fees and damages from common fund; therefore 38 percent of common fund was awarded).

method since the settlement releases the defendant from liability for both damages and attorneys' fees).

As discussed below, thirty-five percent (35%) of the recovery is an appropriate fee in this case, and the lodestar cross-check demonstrates that such a fee is reasonable.

**B.   Thirty-Five Percent of the Settlement Amount is an Appropriate Fee in this Case**

In determining what percentage fee is appropriate, courts in this Circuit consider seven factors:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases ... the district courts should cross-check the percentage award at which they arrive against the "lodestar" method.

Gunter, 223 F.3d at 195 n.1.  The Third Circuit has stressed that these factors "need not be applied in a formulaic way.  Each case is different, and in certain cases, one factor may outweigh the rest."  In re Rite Aid, 396 F.3d at 301.  See also Gunter, 223 F.3d at 303 ("we have generally cautioned against overly formulaic approach in assessing and determining the amounts and reasonableness of attorneys' fees.").

In the instant matter, application of the seven Gunter factors to this case, as well as the lodestar cross-check, overwhelmingly supports a thirty-five percent (35%) fee award.

**1.   Size of the Fund Created and Number of Persons Benefited**

As set forth in the Memorandum of Law in Support of Plaintiffs' Motion for an Order Certifying the Settlement Class, Granting Enhancement Payment, and Approving the Settlement Agreement, through the efforts of Class Counsel, a substantial fund has been created for the

7

benefit of the Settlement Class, a group comprised of seventeen (17) persons.  A cash settlement of $130,000.00 has been obtained solely through the efforts of Class Counsel.  This settlement amount is significant, especially when considered in view of the risks and obstacles to recovery presented in this case, as discussed below.

Pursuant to the Settlement Agreement, Defendant will pay a substantial amount, $130,000.00, which will be used to compensate class members pursuant to the claims procedure. Based upon initial calculations, which may increase or decrease as the result of a number of factors, Class Counsel believes each class member who has worked for Defendant during the entire Covered Period could receive up to $7,400.00 of compensation from the Settlement Amount, which is $400.00 greater than the initial estimate provided in the Class Notice.  This substantial amount is calculated after attorneys' fees, litigation expenses, enhancement payment, and class administration expenses are deducted from the proposed Settlement Amount.   It is Class Counsel's belief that the aforementioned amount represents a significant recovery for class members in light of the significant risks associated with continued litigation, including the risk of decertification of the Class and the risk that Defendant avoid liability altogether by proving that the Operators were properly classified as exempt under the FLSA.

In sum, because the size of the Common Fund created by Class Counsel is significant considering the low number of individuals benefited, this factor weighs in favor of Counsel's thirty-five percent (35%) fee.  What's more, and even more importantly, even after subtracting the requested attorneys' fees, costs and administration expenses, it is Class Counsel's belief that the class members will receive a significant amount of the overtime wages that could have reasonably been proven at trial.

**2.     Presence of Absence of Substantial Objections to the Proposed Attorney's Fees**

The presence or absence of "substantial objections by members of the class to the settlement terms and/or fees requested by counsel" is probative to assessing the settlement. Gunter, 223 F.3d at 195 n.1.  Here, seventeen (17) Class Notices have been mailed to potential class members at their last known address.  See Decl. of Melissa E. Baldwin of RG/2, attached hereto as Exhibit 1 at ¶¶ 4-5.  The Class Notice explained the settlement in this matter and informed class members of the attorneys' fee and expenses request of Class Counsel.  See Class Notice, attached hereto as Exhibit 2, at Section V.  In fact, the Class Notice specifically informed class members that Class Counsel would request a fee of up to thirty-five percent (35%) of the Settlement Amount.  See Exhibit 2 at Section V(A).  **No member of the Class has objected to the proposed fee, and the deadline for objections, May 28, 2014, has passed.**  See Exhibit 1, ¶ 8.

In addition, no class members have objected to the settlement, and no individuals have requested exclusion.  See Exhibit 1, ¶¶ 7-8.  This is a significant indicator of class members' approval and thus weighs in favor of Class Counsel's fee request. See In re Lucent Technologies, Inc. Sec. Litig., 327 F. Supp. 2d 435, 431 (D.N.J. 2004).  See also In re Rent-Way Secs. Litig., 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) (the absence of substantial objections by class members to the fee application supports the reasonableness of Counsel's request); In re Cmty. Bank of N. Va., 2008 U.S. Dist. LEXIS 62787, at *27-28 (W.D. Pa. Aug. 14, 2008) ("The small number of class members who chose to opt out or object relative to the size of the class supports approval of the settlement."); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("Both the utter absence of objections and the nominal number of shareholders who have exercised their right to opt out of this litigation militate strongly in favor of approval of

9

the settlement."); Gilman v. Independence Blue Cross, 1997 U.S. Dist. LEXIS 15481, at *20-21 (E.D. Pa. Oct. 6, 1997) ("The small number of opt-outs and the absence of any opposition to the settlement strongly weigh in favor of approval.").[5]

### 3.      Skill and Efficiency of the Attorneys Involved

The "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." In re AremisSoft, 210 F.R.D. at 132. (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 149 (E.D. Pa. 2000)). The skill and efficiency of the attorney involved is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." Nichols v. SmithKline Beecham Corp., 2005 U.S. Dist. LEXIS 7061, at *71 (E.D. Pa. April 22, 2005) (quoting In re Ikon Office Solutions, Inc. Sec. Litig., 194 F.R.D. 166, 194 (E.D. Pa. 2000)).

Class Counsel has significant employment law experience which includes, but is not limited to, experience handling complex wage and hour class actions. Further, the recovery

---

[5] At least one study found that while the rate of objection to a settlement is negatively correlated with the likelihood that the settlement will be approved, there was no evidence to suggest that the opt-out rate had any effect on settlement approval. Theodore Eisenberg & Geoffrey Miller, The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues, 57 VAND. L. REV. 1529, 1533 (2004). Eisenberg and Miller found, in pertinent part, that:

> [T]he percentage of objectors was greater in cases where the settlement was rejected than in cases where the settlement was approved. This finding suggests that courts do take the percentage of objectors into account, at least to some extent, when ruling on the fairness of settlements. Assuming judicial decisions approving or disapproving settlements are generally accurate, this finding also suggests that levels of objection provide some evidence of a settlement's fairness, adequacy, and reasonableness. When it comes to opt-outs, however, the results are not as predicted: the mean percentage of opt-outs in approved settlements was in fact greater than the mean percentage of opt-outs in disapproved settlements (although the median percentage of opt-outs was higher in disapproved settlements than in approved ones).

Id. at 1564. Furthermore, another study found that "Class members are considerably more likely to opt out of mass tort, employment, and commercial litigation, where individual recoveries are generally higher, and less likely to opt out of consumer cases, where individual recoveries are generally lower." Barbara J. Rothstein & Thomas E. Willing, Managing Class Action Litigation: A Pocket Guide for Judges at 20 (2005).

achieved – $130,000.00 – is substantial given, as discussed above, the relatively small size of the class benefited, and the risks that counsel would not recover anything in this case, as discussed in more detail below.

The "quality and vigor of opposing counsel is also relevant in evaluating the quality of the services provided by" Class Counsel.  In re Lucent Technologies, 327 F. Supp. 2d at 437. Defendant were well-represented by a major law firm, K&L Gates LLP, which ranks among the most respected, competent, and experienced law firms in the Philadelphia area.

Thus, the skill and efficiency of Class Counsel weighs in favor of a thirty-five percent (35%) fee award.

### 4.    Complexity and Duration of the Litigation

The fourth Gunter factor is the complexity and duration of the litigation. Gunter, 223 F.3d at 195 n.1. This factor also weighs in favor of the thirty-five percent (35%) fee request. Class Counsel has litigated this case for a considerable amount of time.  The settlement also resulted from vigorous arms-length negotiations between experienced counsel. The parties reached settlement of these claims only after Class Counsel conducted a thorough investigation of the claims against Defendant of Plaintiff and potential members of the class to be certified under this Agreement. The investigation included, but was not limited to, reviewing payroll records, extensive consultation with the Class Representative and Opt-In Members and performing numerous calculations with respect to the potential damages in this matter.  Class Counsel also has conducted extensive research regarding the FLSA.

Moreover, this case involved complex issues under the FLSA and the Portal-to-Portal Act.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (expertise required for a FLSA class action); Goldman v. RadioShack Corp., 2006 U.S. Dist. LEXIS 2433, at *15 (E.D.

Pa. January 23, 2006) (quoting <u>Barrentine v. Arkansas-Best Freight Sys.</u>, 450 U.S. 738, 743 (1981) (FLSA claims "typically involve complex mixed questions of fact and law . . . ")).  While Class Counsel believes that they would be successful on the merits of the case, a trial in this case would involve significant risks to the claims of the Class because of the fact-intensive nature of proving liability under both the FLSA and Pennsylvania's wage and hour laws, and in light of the defenses available to Defendant, which would pose substantial risk to both liability and damages.  The nature of the allegations asserted and the factual issues involved requires the Operators to prove that they were improperly classified as exempt under the FLSA.  <u>See</u> Collective and Class Action Compl. ¶ 20 (a) – (e).  This would present a significant hurdle to overcome under both federal and state law theories of liability. In addition, the Operators were also faced with the hurdle of not only showing they that did not receive overtime compensation pursuant to the FLSA, but also with the hurdle that they must prove that they have suffered and are entitled to damages.  Again, this determination would be very fact-intensive and complex. Finally, there would be a substantial risk that Defendant could significantly minimize damages or avoid liability altogether by decertifying the previously conditionally certified Class.

Moreover, on October 23, 2014, the parties participated in a settlement conference.  With the assistance of Magistrate Judge Elizabeth T. Hey, the parties reached the settlement discussed herein.  Based on the above, a thirty-five percent (35%) fee award is appropriate based on the duration and complexity of this litigation.

### 5.    Risk of Nonpayment

Courts recognize that the risk of non-payment in complex cases such as this one is "very real and is heightened when Plaintiffs' Counsel press to achieve the very best result for their clients."  <u>In re AremisSoft</u>, 210 F.R.D. at 134.  Class Counsel undertook this action under a

wholly contingent basis and the risk of non-payment has been high throughout this litigation. Defendant's defenses in this matter posed a real risk to both a finding of liability and damages. These defenses include: whether Plaintiffs were properly designated as exempt from the overtime requirements of the Fair Labor Standards Act and/or the Pennsylvania Minimum Wage Act, and whether there existed a contract for wages between Plaintiff and Defendant so that Plaintiffs would be entitled to relief under the WPCL.  Although Class Counsel believes this to be a meritorious case, a realistic assessment of the case shows that the risks of decertification of the conditionally certified Class and resolution of liability issues, protracted litigation, the outcome of the trial, and the inevitable appeal process are great.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation.  Even if this matter survived a motion for decertification or summary judgment, Plaintiffs would have expended a substantial amount of money preparing for trial (including hiring experts, engaging in expert discovery, and drafting motions *in limine*) without any guarantee of success at trial.  Further, even if Plaintiffs succeeded at trial, Defendant would have appealed.  At every step of the litigation, Defendant could have succeeded.  Therefore, Plaintiffs were at great risk for nonpayment.

Moreover, it was apparent that Defendant only wished to settle if they could achieve a complete settlement on behalf of all Operators.  In re Lucent Technologies, 327 F. Supp. 2d at 438 (defendant would only settle to achieve a global resolution of all Lucent-related lawsuits). The parties crafted such a settlement which would provide for relief for a complete class.

Class Counsel also advanced expenses (a total of $583.21) that would not have been reimbursed absent a successful result.  Lazy Oil Co. v. Witco Corp., 95 F. Supp. 2d 290, 344 (W.D. Pa. 1997) ("[Counsel] invested thousands of hours and over $2 million of their own

money in pursuing this case, and there was no assurance that any recovery, by trial or Settlement, would ever be forthcoming.").

In sum, there was a substantial risk that Plaintiffs and Class Counsel would recover nothing in this litigation.

### 6.     Amount of Time Devoted to the Case by Class Counsel

Class Counsel spent approximately 93.6 hours working on this case since the inception of litigation.  <u>See</u> Invoice for Charles Barber FLSA Unpaid Wage and Overtime Claims for Period Ending June 9, 2014, attached hereto as Exhibit 3.[6]  This substantial amount of time further supports the fee request.  <u>See</u> <u>Nichols</u>, 2005 U.S. Dist. LEXIS 7061, at *72 (approving fee when counsel devoted substantial hours of work).  As a result of Class Counsel's devotion to this case and because Class Counsel is a small law firm, Class Counsel was forced to abstain from other work.  <u>See</u> <u>Lazy Oil</u>, 95 F. Supp. 2d at 323 ("In addition to noting the vast amount of work which was required in prosecuting this case, we also note Class Counsels' representation that their involvement in this litigation required them to abstain from working on other matters.").  This factor weighs in favor of Plaintiffs' counsel's fee request.

### 7.     Awards in Other Common Fund Cases

There is no consensus on what percentage of a common fund is reasonable, although several courts in this circuit have observed that percentage-of-recovery fee awards generally range from 19 to 45 percent.  <u>See</u> <u>Erie County Retirees Assoc. v. County of Erie</u>, 192 F. Supp. 2d 369, 378 (W.D. Pa. 2002) (citing <u>Lazy Oil</u>, 95 F. Supp. 2d at 341).  <u>See also</u> <u>In re SmithKline Beckman Corp. Sec. Litig.</u>, 751 F. Supp. 525, 533 (E.D. Pa. 1990) (recognizing that courts have awarded attorneys' fees of up to "45% of the settlement fund created"); <u>In re General Motors</u>

---

[6] Due to attorney-client privilege, Class Counsel has only attached the final page of the Invoice, which sets forth the total amount of billable hours, attorneys' fees, and expenses incurred in this action.  Upon request, Class Counsel can deliver to the Court's Chambers a complete copy of the Invoice's entries for each billable entry.

Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 758, 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund). "In arriving at an appropriate percentage," courts "may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." County Retirees Assoc., 192 F. Supp. 2d at 381 (citations omitted).

Attorneys' fees of thirty-five percent (35%) are common in this Circuit.  Indeed, the Court in In re AremisSoft, stated that **"[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund."**  In re AremisSoft, 210 F.R.D. at 133-34 (emphasis added) (citing In re Fidelity Med. Inc., Sec.Litig., Master File No. 92-1908 (MTB)(D.N.J Oct. 4, 1994) (awarding counsel fees of 33 1/3% of settlement fund)).  Attorneys' fees of approximately thirty-five percent (35%) of the common fund or more have also specifically been awarded in labor and employment class actions. See Ayres v. Chester County, Civ. A. No., 07-3328, E.D. Pa. (Order, dated June 23, 2008) (Kelly, J.) (awarding forty percent of common fund in FLSA/PMWA case); Erie County Retirees Assoc., 192 F. Supp. 2d at 382-83 (awarding thirty-eight percent of common fund in ADEA case); Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (awarding almost forty percent of $125,000.00 common fund in a FLSA case).  In sum, fee awards ranging from thirty to forty-three percent have been awarded and as the Court noted in Erie County Retirees Assoc., "[f]ee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000.00 to $6.5 million."  See Erie County Retirees Assoc., 192 F. Supp. 2d at 381.  See also Aamco Automatic Transmissions, Inc., 82 F.R.D. 405, 420 (E.D. Pa. 1979) (approving forty-three percent fee); Payson v. Capital One Home Loans, LLC, No. 07-CV-2282, 2009 U.S. Dist.

LEXIS 25418, at *10 (D. Kan. March 26, 2009) (approving forty percent fee); Eastman Kodak Co., 228 F.R.D. at 188 (approving forty percent fee); In re Eunice Train Derailment, No. 6:00CV1267, 2005 U.S. Dist. LEXIS 46237, at *36 (W.D. La. March 28, 2005) (approving forty percent fee); Howes v. Atkins, 668 F. Supp. 1021, 1027 (E.D. Kent. 1987) (approving fifty percent fee); In re Ampicillin Antitrust Litigation, 526 F. Supp. 494, 499 (D. D.C. 1981) (approving forty-five percent fee); In re Merry-Go-Round Enterprises, Inc., 244 B.R. 327, 330 (Bankr. D. Md. 2000) (approving forty percent fee in bankruptcy action); Beech Cinema, Inc. v. Twentieth Century Fox Film Corp., 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979) (approving attorneys' fees of more than fifty percent of damages recovered in antitrust action); Brief for Plaintiffs at 3-6, Mitchusson v. Exco Resources, Inc., No. CJ-2010-32, District Court of Caddo County, Oklahoma (Nov. 8, 2011) (citing thirteen (13) Oklahoma class action common fund settlements where attorneys' fees of forty percent or greater were approved).

Based on the above-referenced cases, an award of thirty-five percent (35%) of the common fund is proper in this matter.[7]

### C.    A Loadstar Cross-Check Demonstrates that the Fee Is Reasonable

The Third Circuit has "suggested it is sensible for a court to use a second method of fee approval [a lodestar analysis] to cross-check its initial fee calculation." In re Rite Aid, 396 F.3d at 300. Importantly, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." In re Rite Aid, 396 F.3d at 307. See also Cendant, 264

---

[7] In Prudential, the Third Circuit Court of Appeals considered the following three (3) other factors that may be relevant to consider in an attorneys' fees case: (1) the value of the benefits to class members attributable to Class Counsel as compared to other groups; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) if there are "innovative" terms of settlement. See In re Prudential Insur. Co., 148 F.3d at 338. To the extent these factors are applicable to this matter, they also weigh in favor of Counsel's thirty-five percent (35%) fee. Indeed, the $130,000.00 Settlement Amount was achieved solely by Class Counsel's efforts and the thirty-five percent (35%) fee is consistent with privately negotiated fee agreements. See In re Ikon, 194 F.R.D. at 194 (stating that in private contingency fee cases, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent (30-40%).

F.3d at 285 ("The lodestar cross-check, however, is very time consuming.  Thus, while the Court should in the first instance test the presumption, if challenged, by the Gunter factors, it may, if necessary, utilize the lodestar cross-check.").  "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.  Furthermore, the resulting multiplier need not fall within any pre-defined range, provided that the District Court's analysis justifies the award."  In re Rite Aid, 396 F.3d at 306-07 (citations and footnotes omitted).  The reasonableness of the thirty-five percent (35%) fee requested here is thus further demonstrated by the lodestar cross-check.

The lodestar here is approximately **$30,420.00**.[8]  See Exhibit 3.  The lodestar was calculated by multiplying the total number of hours counsel worked on this matter (93.6) by the reasonable hourly rate of $325.00.  The multiplier in this case (i.e., cross-check) is therefore **1.5** (45,500/30,420 = 1.5).  There can be no serious question that a multiplier of approximately **1.5** is reasonable. See Prudential, 148 F.3d at 341 ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions § 14.03, at 14-15 (3d ed. 1992)).  See also In re Cendant PRIDES Litig., 243 F.3d 722, 742 (3d Cir. 2001) (surveying cases to determine that lodestar multiples range from 1.35 to 2.99); In re Linerboard Antitrust Litig., 2004 U.S. Dist. LEXIS 10532, at *50 (E.D. Pa. June 2, 2004) ("The Court also notes that during 2001-2003, the average multiplier approved in common fund class actions was 4.35 and during 30 year period from 1973-2003, average multiplier approved in common fund class actions was 3.89.").

---

[8] It should also be noted that Class Counsel will expend additional time and expense in monitoring the implementation of the settlement going forward and addressing any issues that may arise concerning the distribution of the class member settlement awards.

Therefore, the lodestar cross-check here indicates that the thirty-five percent (35%) fee award is reasonable.

## IV.    THE COURT SHOULD AWARD COUNSEL'S COSTS AND EXPENSES

Class Counsel "is entitled to reimbursement for expenses adequately documented and reasonably and appropriately incurred in the prosecution of the class action." Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995); In re AremisSoft, 210 F.R.D. at 135. Courts in this Circuit have held that photocopying expenses, telephone and facsimile charges, postage, messenger and express mail service charges, witness fees, filing fees, computer-assisted research such as Lexis and Westlaw, and costs associated with expert witnesses and consultants are reasonably incurred in connection with the prosecution of complex litigation. Abrams, 50 F.3d at 1225; In re AremisSoft, 210 F.R.D. at 135; In re Safely Components Internat'l, 166 F. Supp.2d at 108; Cullen, 197 F.R.D. at 151. The reasonable cost and expense incurred by Class Counsel is identified in Exhibit 3 as $583.21. See Exhibit 3.

Since the commencement of this case, Class Counsel has advanced all the costs and expenses. These costs and expenses advanced by counsel were reasonable and necessary to the prosecution of the case, and should therefore be reimbursed from the Settlement Amount. The Court should award Class Counsel $583.21 in costs and expenses.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award attorneys' fees of thirty-five percent (35%) of the Settlement Amount, as well as expenses in the amount of $583.21.[9]

---

[9] Plaintiff has submitted a proposed order granting final approval of class settlement and payment of attorney fees as Exhibit 1 to Plaintiff's Memorandum of Law in Support of Plaintiffs' Motion for an Order Approving the Settlement Agreement.

**MURPHY LAW GROUP, LLC**

By: _/s/ Michael Murphy_____
     Michael P. Murphy, Jr., Esquire
     One Penn Center, Suite 1230
     1617 John F. Kennedy Blvd.
     Philadelphia, PA 19103
     TEL: 215-375-0961 or 267-273-1054
     FAX: 215-525-0210
     murphy@phillyemploymentlawyer.com
     *Attorney for Plaintiff*

Dated: June 12, 2014

19

## CERTIFICATE OF SERVICE

I, Michael Murphy, Esquire, hereby certify that on June 12, 2014, I caused a true and correct copy of the foregoing to be filed via ECF filing, which will send notification of such filing to the following counsel:

> Michael A. Pavlick
> K&L Gates LLP
> K&L Gates Center
> 210 Sixth Ave.
> Pittsburgh, PA 15222
> Tel: 412-355-6275

> /s/ Michael Murphy
> Michael Murphy

Dated: June 12, 2014